UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

COREY CASH and CRUZ ORNELAS,
on behalf of themselves and all others
similarly situated,

Plaintiffs,

No. _____

v.

INTREPID POTASH, INC. and
INTREPID POTASH-NEW MEXICO, LLC,

Defendants.

## ORIGINAL CLASS ACTION COMPLAINT

### Nature of the Case

1. Corey Cash ("Cash") and Cruz Ornelas ("Ornelas") (together "Plaintiffs") bring this class action to recover unpaid wages and other damages from Intrepid Potash, Inc. ("Intrepid") and Intrepid Potash-New Mexico, LLC ("Intrepid-NM") (together "Defendants").

2. Cash worked for Defendants as a Load Out Operator at Defendants' mining facilities in New Mexico.

3. Ornelas worked for Defendants as an underground miner at Defendants' mining facilities in New Mexico.

4. Like the Class Members (as defined below), Plaintiffs regularly worked more than 40 hours in a workweek while employed by Defendants.

5. However, Defendants did not pay Plaintiffs and other hourly employees for all hours worked.

6. Instead, Defendants required Plaintiffs and other Class Members to perform work "off the clock" without compensation.

1

7. Specifically, Defendants require Plaintiffs and other hourly employees to arrive at work early to don (put on) their required personal protective equipment ("PPE") before their paid shifts begin, and to stay late to doff (remove) their PPE after their paid shifts end.

8. For load out operators like Cash and underground miners like Ornelas, this process is particularly time-consuming, as they must don and doff specialized mining equipment and clean potash dust and other materials from their bodies and equipment.

9. This unpaid donning and doffing time regularly results in overtime hours that go uncompensated.

10. The New Mexico Minimum Wage Act ("NMMWA") does not incorporate the federal Portal-to-Portal Act's exclusions related to preliminary and postliminary activities.

11. Unlike federal law, the NMMWA requires compensation for all hours worked on the employer's premises, including time spent donning and doffing PPE. Therefore, preparatory and concluding activities that would be excluded under the Portal-to-Portal Act under the FLSA are covered under the NMMWA. *Segura v. J.W. Drilling, Inc., 2015-NMCA-085, ¶ 9, 355 P.3d 845, 848*, 2015-NMCA-085, ¶ 9, 355 P.3d at 848 ("[T]he exclusions in the Portal-to-Portal Act are completely absent from the MWA. There being no analogue in the MWA, the interpretations of the Portal-to-Portal Act in case law are unhelpful.").

12. Plaintiffs bring this action as a class action on behalf of all current and former Class Members who were subjected to Defendants' company-wide policy of failing to pay employees for time spent donning and doffing PPE.

## Jurisdiction and Venue

13. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). This is a proposed class action in which:

   a. There are 100 or more members in each proposed Class;

        b.      At least some members of the proposed Classes have different citizenship from Defendants; and

        c.      The claims of the proposed Class Members exceed $5,000,000 in the aggregate, exclusive of interest and costs.

14. The Court has personal jurisdiction over Defendants because:

        a.      Defendants conduct substantial business operations in New Mexico;

        b.      Defendants employ hundreds of workers in New Mexico;

        c.      Defendants operate multiple mining facilities in New Mexico;

        d.      The events giving rise to this action occurred in New Mexico; and

        e.      Defendants have availed themselves of New Mexico laws and protections.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## The Parties

16. Corey Cash is an adult citizen of New Mexico and resides in Eddy County, Carlsbad, New Mexico.

17. Cash worked for Defendants as a Load Out Operator for approximately nine months in 2023.

18. Throughout his employment with Defendants, Cash regularly worked more than 40 hours per week.

19. Cruz Ornelas is an adult citizen of New Mexico and resides in Eddy County, Carlsbad, New Mexico.

20. Ornelas worked for Defendants as an underground miner between 2022 and 2024.

21. Throughout his employment with Defendants, Ornelas regularly worked more than 40 hours per week.

22. Defendant Intrepid Potash, Inc. is a Delaware corporation with its principal place of business in Denver, Colorado.

23. Defendant Intrepid Potash-NM is a New Mexico limited liability company.

24. Defendants jointly employed Plaintiffs and the Class Members.

25. Defendants' operations are interrelated and share common management. While Intrepid-NM purports to operate the New Mexico mining facilities, Intrepid controls every significant aspect of the mining operations.

26. Upon information and belief, Intrepid owns 100% of Intrepid-New Mexico.

27. Upon information and belief, the following facts demonstrate Defendants are joint employers:

    a. Intrepid retained control and/or exercised authority to hire, fire, and discipline employees at the New Mexico facilities, including Plaintiffs and the Class Members;

    b. Intrepid controlled payroll, scheduling, and human resources functions for New Mexico employees, including Plaintiffs and the Class Members;

    c. Intrepid supervised and controlled employee work schedules and conditions of employment for Plaintiffs and the Class Members;

    d. Intrepid determined the rate and method of payment for all employees, including Plaintiffs and the Class Members;

    e. Intrepid maintained and/or has access to employment records for Plaintiffs and the Class Members;

    f. Intrepid established employment policies and procedures for Plaintiffs and the Class Members;

    g. Intrepid provided employee benefits for Plaintiffs and the Class Members;

    h. Intrepid owns the facilities where Plaintiffs and Class Members worked;

    i. Intrepid provided the equipment and materials used by employees;

    j. The work performed by Plaintiffs and Class Members is integral to Intrepid's business;

    k. Employees work exclusively for Defendants; and

    l. The relationship between Defendants and employees is permanent rather than temporary.

28. At all relevant times, Defendants have employed Plaintiffs and the Class Members within the meaning of the NMMWA.

29. Defendants may be served with process as follows:

    a. Intrepid Potash, Inc. through its registered agent Corporation Service Company, 110 E. Broadway St, Hobbs, NM 88240;

    b. Intrepid Potash-New Mexico, LLC through Corporation Service Company, 110 E. Broadway St, Hobbs, NM 88240.

## Factual Allegations

**A.  Defendants' Business Operations**

30. Defendants operate underground potash mining and surface processing facilities in New Mexico.

31. These operations include underground mining, mineral processing, compaction, and loadout facilities.

32. To perform these operations, Defendants employ hundreds of workers in various hourly positions, including underground miners, processing plant operators, maintenance workers, and loadout operators.

33. Defendants' employees work long hours on rotating shifts to keep the mines and processing facilities operating, often 24 hours per day, 7 days per week.

**B.  Required PPE and Safety Equipment**

34. To perform their jobs, Plaintiffs and Class Members are required to wear PPE including:

    a. Hard hats;

    b. Safety glasses;

    c. Steel-toed boots;

    d. Fire-retardant clothing (for mechanics and electricians);

    e. Reflective gear;

   f.  Safety gloves;

   g.  Hearing protection;

   h.  Respirators (for underground miners);

   i.  Self-rescue devices (for underground miners); and

   h.  Headlamps (for underground miners)

35. Much of this safety equipment is mandated by federal mining regulations.

36. Plaintiffs and other Class Members cannot safely perform their jobs without this PPE and safety equipment.

  **C.**  **Mandatory Donning and Doffing Procedures**

37. Plaintiffs and other hourly employees donned this PPE at Defendants' facilities before their paid shifts began.

38. Defendants required Plaintiffs and other hourly employees to doff this PPE at Defendants' facilities after their paid shifts ended.

39. For surface workers like Cash, the process of donning required PPE typically took in excess of 15 minutes at the start of each shift and included:

   a.  Walking to the locker/wash house area;

   b.  Retrieving PPE from lockers;

   c.  Putting on required safety clothing;

   d.  Checking and testing safety equipment;

   e  Walking to assigned work areas;

40. For surface workers like Cash, the process of doffing required PPE typically took in excess of 15 minutes at the end of each shift and included:

   a.  Cleaning equipment and PPE;

   b.  Returning equipment to designated locations;

   c.  Removing contaminated safety clothing;

    d.  Showering to remove hazardous materials;

    e.  Storing PPE in lockers.

    f.  Walking from the locker/wash house area to leave the work site.

  41.  For underground miners like Ornelas, the process could be even more time-consuming due to additional safety equipment and decontamination requirements.

  42.  The pre-shift process for underground miners also typically took in excess of 15 minutes and included:

    a.  Walking to the locker/wash house area;

    b.  Retrieving PPE from lockers;

    c.  Putting on specialized mining clothing and equipment;

    d.  Testing safety devices;

    e.  Obtaining and checking self-rescue devices;

    f.  Preparing battery packs and lights.

  43.  The post-shift process for underground miners typically took in excess of 15 minutes and included:

    a.  Cleaning mining equipment;

    b.  Returning safety devices;

    c.  Removing contaminated mining clothing;

    d.  Extensive showering to remove dust and chemicals;

    e.  Storing PPE and equipment.

  44.  Thus, Plaintiffs and the Class Members typically spent between 30 and 60 minutes each workday performing unpaid work on Defendants' premises.

### D.    Compensation Policies and Practices

45.    Throughout their employment, Plaintiffs regularly worked more than 40 hours per workweek.

46.    Defendants did not compensate Plaintiffs or the Class Members for their time spent donning and doffing PPE.

47.    The NMMWA does not incorporate the federal Portal-to-Portal Act's exclusions for preliminary and postliminary activities.

48.    Unlike the federal Fair Labor Standards Act, the NMMWA contains no exemption for time spent donning and doffing protective equipment.

49.    Instead, the NMMWA requires that employers compensate employees for all time worked on the employer's premises, including time spent donning and doffing PPE.

50.    Defendants were aware that Plaintiffs and other hourly employees had to don and doff PPE on their premises.

51.    Defendants were aware that Plaintiffs and other hourly employees were not being compensated for time spent donning and doffing PPE.

## Class Action Allegations

52.    Plaintiff Cash brings his claim under Rule 23 of the Federal Rules of Civil Procedure on behalf of:

> All current and former hourly surface employees who worked for Defendants in New Mexico during the applicable statutory period (the "Surface Class Members").

53.    Plaintiff Ornelas brings his claims under Rule 23 of the Federal Rules of Civil Procedure on behalf of:

> All current and former underground miners who worked for Defendants in New Mexico during the applicable statutory period (the "Underground Class Members").

54. The proposed classes of Surface Class Members and Underground Class Members (collective "Classes" and "Class Members") meet all requirements for class certification:

### Numerosity

55. The Classes are so numerous that joinder of all members is impracticable.

56. Upon information and belief, Defendants employ hundreds of hourly workers at their New Mexico facilities.

57. The precise number of Surface Class Members and Underground Class Members should be readily available from Defendants' personnel, scheduling, and payroll records.

58. Class Members may be informed of the pendency of this action through direct mail, email, text message and posting at Defendants' facilities.

### Commonality

59. There are questions of law and fact common to the Classes, including:

   a. Whether Defendants required Class Members to don and doff PPE without compensation;

   b. Whether time spent donning and doffing PPE is compensable under the NMMWA;

   c. Whether Class Members worked hours over 40 in individual workweeks;

   d. Whether Defendants' practices violated the NMMWA; and

   e. The proper measure of damages.

### Typicality

60. Plaintiffs' claims are typical of Class Members' claims because:

   a. Surface Class Members and Underground Class Members, respectively, were subject to the same PPE requirements;

   b. All Class Members were required to don and doff PPE on Defendants' premises;

9

    c.    All Class Members were denied compensation for donning and doffing time;

    d.    All claims arise from the same unlawful policies and practices.

### Adequacy

61.    Plaintiffs will fairly and adequately protect the interests of the class because:

    a.    They have no interests antagonistic to the Classes;

    b.    They seek the same form of relief as other Class Members;

    c.    They have retained counsel experienced in wage and hour class action litigation.

### Predominance and Superiority

62.    Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy because:

    a.    The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation;

    b.    Individual actions would create a risk of inconsistent adjudications;

    c.    Class treatment will allow claims of similarly situated workers to be resolved in a single forum;

    d.    The issues in this litigation can be efficiently resolved in a single action;

    e.    Management of this action as a class action will not present any likely difficulties;

    f.    Defendants have acted on grounds generally applicable to the class; and

    g.    Class treatment will provide a fair and efficient method for adjudicating this controversy.

### Continuing Course of Conduct Allegations

63.    Effective June 19, 2009, the NMMWA was amended to provide that civil actions "may encompass all violations that occurred as part of a continuing course of conduct *regardless of the date on which they occurred*." NMSA 1978 § 50-4-32 (emphasis added).

64. Upon information and belief, Defendants have operated underground potash mining and surface processing facilities in New Mexico since June 2009.

65. Upon information and belief, Defendants have employed hourly surface employees and hourly underground minors at their New Mexico facilities since June 2009.

66. Upon information and belief, Defendants have required hourly surface employees and hourly underground minors to don and doff PPE at their New Mexico facilities since June 2009.

67. Since June 2009, hourly surface employees and hourly underground minors have worked more than 40 hours per week in individual workweeks.

68. Since June 2009, Defendants have failed to pay hourly surface employees and hourly underground minors for time spent donning and doffing PPE.

69. Since June 2009, Defendants have failed to pay hourly surface employees and hourly underground minors overtime pay when they worked more than 40 hours per week in one or more individual workweeks.

**Count I**
**VIOLATION OF THE NEW MEXICO MINIMUM WAGE ACT**
**Class Action**

70. Plaintiffs incorporate all previous paragraphs by reference.

71. At all relevant times, Defendants were Plaintiffs' "employer" as defined by the NMMWA.

72. At all relevant times, Plaintiffs and Class Members were Defendants' "employees" as defined by the NMMWA.

73. The NMMWA requires employers to pay employees overtime wages at one and one-half times their regular rate of pay for all hours worked over 40 in a workweek.

74. The NMMWA requires compensation for all hours worked on the employer's premises, including time spent donning and doffing PPE

75. Unlike the federal Fair Labor Standards Act, the NMMWA does not incorporate the Portal-to-Portal Act's exclusions for preliminary and postliminary activities.

76. Plaintiffs and Class Members regularly worked more than 40 hours per workweek.

77. Defendants violated the NMMWA by:

    a. Requiring Plaintiffs and Class Members to don and doff PPE without compensation;

    b. Failing to maintain accurate records of all time worked;

    c. Failing to pay proper overtime wages for all hours worked over 40 in a workweek.

78. Defendants' violations of the NMMWA with respect to Plaintiffs and the Class Members occurred as part of a continuing course of conduct under N.M. Stat. Ann. 1978 § 50-4-32.

79. Because Defendants' violations of the NMMWA occurred as part of a continuing course of conduct, Plaintiffs and the Class Members are entitled to recover for all such violations regardless of the date on which they occurred.

80. As a result of Defendants' violations, Plaintiffs and Class Members have suffered damages in amounts to be determined at trial.

**Requested Relief**

Plaintiffs and the Class Members pray for relief as follows:

   a. An order certifying this case as a class action;

   b. Designation of Plaintiffs as class representatives;

   c. Designation of undersigned counsel as class counsel;

   d. An award of unpaid overtime wages;

    e.      An award of treble damages pursuant to N.M.S.A. § 50-4-26(C);

    f.      An award of reasonable attorneys' fees and costs;

    g.      Pre- and post-judgment interest;

    h.      An injunction prohibiting Defendants from continuing to violate the NMMWA; and

    i.      Such other and further relief as the Court deems just and proper.

## Jury Demand

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**DURHAM, PITTARD & SPALDING, LLP**

*/s/ Justin R. Kaufman*
Justin R. Kaufman
Philip M. Kovnat
505 Cerrillos Road, Suite A209
Santa Fe, NM  87501
Telephone: (505) 986-0600
Facsimile: (505) 986-0632
jkaufman@dpslawgroup.com
pkovnat@dpslawgroup.com

Douglas M. Werman
Sarah J. Arendt
John J. Frawley
**WERMAN SALAS P.C.**
77 W. Washington, Suite 1402
Chicago, Il 60602
Telephone: (312) 419-1008
Facsimile: (312) 419-1025
dwerman@flsalaw.com
jfrawley@flsalaw.com

***Attorneys for Plaintiffs***